## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| FTX TRADING LTD., *et al.*, | |
| Plaintiffs, | Adv. Pro. No. 24-_____ (JTD) |
| -against- | |
| ALEXANDER CHERNYAVSKY, BRANDON ORR, CHUKWUDOZIE EZEOKOLI, EDWIN GARRISON, GREGG PODALSKY, JULIE PAPADAKIS, KYLE RUPPRECHT, LEANDRO CABO, MICHAEL LIVIERATOS, MICHAEL NORRIS, RYAN HENDERSON, SHENGYUN HUANG, SUNIL KAVURI, VIJETH SHETTY, VITOR VOZZA, and WARREN WINTER, | |
| Defendants. | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### PURSUANT TO 11 U.S.C. §§ 362 AND 105

FTX Trading Ltd. ("FTX") and its affiliated debtors and debtors-in-possession in

the above-captioned Chapter 11 Cases (each, a "Debtor," and collectively, the "FTX Debtors")

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

allege the following based upon personal knowledge and upon their investigation to date as to themselves and their own acts, and a review of available information:

## <u>INTRODUCTION</u>

1.    The FTX Debtors bring this adversary proceeding pursuant to Rules 7001(1), 7001(7), 7001(9) and 7065 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and §§ 105(a), 362(a), 542(a)(1) and 542(e) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") for declaratory and injunctive relief and for the turnover of property belonging to the FTX Debtors' estate.  *First*, the FTX Debtors seek an order enforcing the automatic stay provided in section 362(a) of the Bankruptcy Code against Defendants and similarly situated creditors with respect to their actions brought against (i) Samuel Bankman-Fried, Caroline Ellison, Zixiao (Gary) Wang, and Nishad Singh (the "<u>FTX Insiders</u>"),[2] (ii) Daniel Friedberg ("<u>Friedberg</u>"),[3] and (iii) the VC Defendants (as defined below)[4] in the multidistrict litigation styled

---

[2]    *See* DeCamp Decl. Ex. 1 (the "<u>MDL FTX Insiders Compl.</u>").  Citations to "DeCamp Decl. Ex. __" refer to the declaration of Justin J. DeCamp in Support of the FTX Debtors' Motion for Declaratory and Injunctive Relief Enforcing the Automatic Stay and Enjoining Certain MDL Actions filed simultaneously with this Adversary Complaint.

[3]    Despite not being named as a defendant in the MDL FTX Insiders Complaint, MDL Counsel purports to have also settled claims against Friedberg that were previously the subject of a different MDL-related action.  *See* DeCamp Decl. Ex. 2 ("<u>Prelim. Approval Mot.</u>") at 1 n.1, 8; Ex. 3 ("<u>Proposed Settlements</u>"), Ex. B-4, ¶ 1.6 (citing DeCamp Decl. Ex. 4, Ex. 5).  The MDL FTX Insiders Complaint alleges that its definition of "FTX Insider Defendants" includes "all persons that controlled, assisted, and worked at the FTX Group that helped promote and sell the Deceptive FTX Platform, YBAs and/or FTT, but who are not personally involved in the FTX restructuring process, including Samuel Bankman-Fried, Caroline Ellison, Gary (Zixiao) Wang, and Nishad Singh."  MDL FTX Insiders Compl. at 1 n.1.  As used by the FTX Debtors herein, the term "FTX Insiders" does not include Friedberg.

[4]    The "VC Defendants" are the defendants named in the Amended Domestic Venture Capital Funds Complaint, the MDL, No. 23-md-03076 (S.D. Fla. Aug. 8, 2023), ECF No. 157 and the Corrected Amended Multinational Venture Capital Fund Complaint, the MDL, No. 23-md-03076 (S.D. Fla. Aug. 11, 2023), ECF No. 182:  Altimeter Capital Management, LP; K5 Global Advisor, LLC; Multicoin Capital Management LLC; Paradigm Operations LP; Ribbit Management Company, LLC; SB Group U.S., Inc.; Sequoia Capital Operations, LLC; Sino Global Capital Holdings, LLC; Sino Global Capital Limited; SkyBridge Capital II, LLC; SoftBank Global Advisers Limited; SoftBank Group Corp.; SoftBank Investment Advisers (UK) Limited; Temasek Holdings (Private) Limited; Temasek International (USA) LLC; Thoma Bravo, LP; and Tiger Global Management, LLC.

*In re FTX Cryptocurrency Exchange Collapse Litigation*, No. 23-md-03076 (S.D. Fla. 2023) (the "MDL") because these actions (together, the "MDL FTX Insiders and VC Actions")[5] assert claims that are property of the FTX Debtors' estate.[6] Other estate claims purportedly asserted in the MDL will be addressed separately by co-counsel responsible for those claims.

2.      *Second*, to the extent the Court determines that the MDL FTX Insiders and VC Actions assert any claims that are not property of the FTX Debtors' estate, the FTX Debtors seek an extension of the automatic stay to those claims pursuant to section 362(a) of the Bankruptcy Code in order to protect the FTX Debtors' reorganization efforts.

3.      *Third*, the FTX Debtors seek to enjoin the MDL FTX Insiders and VC Actions, which have interfered, and will continue to interfere, with the orderly and effective administration of the FTX Debtors' estate, in order to permit solicitation and confirmation of a plan of reorganization.

4.      *Fourth*, to the extent that the Defendants receive property belonging to the FTX Debtors' estate or recorded information related to the FTX Debtors' property or financial affairs from the FTX Insiders, Friedberg, or the VC Defendants, the FTX Debtors seek an order compelling the Defendants turn over to the FTX Debtors said property or recorded information, as applicable.

5.      The FTX Debtors have initiated this adversary proceeding in order to safeguard property belonging to the FTX Debtors' estate and enable the FTX Debtors to pursue

---

[5]      This definition includes *Garrison* v. *Bankman-Fried*, No. 22-cv-23753 (S.D. Fla. 2022) and *Podalsky* v. *Bankman-Fried*, No. 22-cv-23983 (S.D. Fla. 2022), which are the actions purportedly underlying MDL Counsel's proposed settlement with Friedberg. *See* Proposed Settlements Ex. B-4, ¶ 1.6.

[6]      True and correct copies of the complaints in the MDL FTX Insiders and VC Actions can be found at DeCamp Decl. Ex. 1, Ex. 4 (the "MDL Domestic VC Compl.") and Ex. 5 (the "MDL Multinational VC Compl.").

their reorganization objectives for these Chapter 11 cases, including the orderly and effective administration of their estate.

## JURISDICTION AND VENUE

6.    This adversary proceeding arises in and relates to the FTX Debtors' case pending before this Court under Chapter 11 of the Bankruptcy Code.

7.    The Court has jurisdiction to consider this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

8.    This Court has subject matter jurisdiction over the claims in the MDL FTX Insiders and VC Actions pursuant to 28 U.S.C. §§ 157 and 1334.  Related-to jurisdiction exists over the claims against the FTX Insiders, Friedberg and the VC Defendants because (i) these Actions assert causes of action that are property of the FTX Debtors' estate and (ii) if the claims against these Defendants are not stayed, the FTX Debtors face the risk of being bound or prejudiced by multiple (and potentially inconsistent) determinations of factual and legal issues.

9.    This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rules 7008-1 and 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the FTX Debtors consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

10.    Venue for this matter is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR RELIEF

11.    The statutory bases for the relief requested herein are sections 105(a), 362(a), 542(a)(1) and 542(e) of the Bankruptcy Code.

12.    The FTX Debtors have commenced this adversary proceeding pursuant to Bankruptcy Rules 7001(7), 7001(9), and 7065.

## THE PARTIES

13.    The FTX Debtors consist of the nearly 100 entities comprising the FTX Group[7] with voluntary petitions for relief pending under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  Foremost among these entities is FTX Trading, a corporation registered in Antigua and Barbuda.  Its principal place of business was in Nassau, Bahamas.  FTX Trading did business as "FTX.com," a global exchange that offered customers the ability to trade cryptocurrencies and cryptocurrency-related derivatives.

14.    Each Defendant in this adversary proceeding is a named plaintiff in the MDL FTX Insiders and/or VC Actions.  Each Defendant alleges damages based on the theory that the FTX Insider Defendants and the VC Defendants "knew or should have known" about the fraudulent and illegal activity committed by the FTX Insiders prior to the collapse of the FTX Group.

## OTHER RELEVANT PERSONS

15.    Samuel Bankman-Fried was a co-founder of FTX.com and WRS and, at all relevant times, controlled these entities.  Bankman-Fried also co-founded Debtors Alameda

---

[7]    The FTX Group comprises four silos:  (a) a group composed of Debtor West Realm Shires ("WRS") and its Debtor and non-Debtor subsidiaries; (b) a group composed of Debtors Alameda, Alameda Research LLC, and their Debtor subsidiaries ("Alameda"); (c) a group composed of Debtor Clifton Bay Investments LLC, Debtor Clifton Bay Investments Ltd., Debtor Island Bay Ventures Inc., and Debtor FTX Ventures Ltd.; and (d) a group composed of Debtor FTX Trading Ltd. and its Debtor and non-Debtor subsidiaries.

Research Ltd., Alameda Research LLC and their subsidiaries ("<u>Alameda Research</u>"), which, at all relevant times, he also controlled.

16.     Caroline Ellison was the co-Chief Executive Officer of Alameda Research from August 2021 until September 2022, when she was named the sole CEO.

17.     Nishad Singh was the former Director of Engineering at FTX.com.  Singh was also the Chief Security Officer and Chief Engineer of WRS.

18.     Gary Wang was a co-founder of FTX.com and its former Chief Technology Officer.  Wang was also a co-founder of FTX US and the Chief Technology Officer of WRS.

19.     Bankman-Fried, Wang, Singh, and Ellison are collectively referred to herein as the "<u>FTX Insiders</u>."

20.     Friedberg was the Chief Regulatory Officer, Chief Compliance Officer, and General Counsel of FTX, which oversaw and ran the FTX.com exchange.  He was also the Executive Vice President and Chief Regulatory and Compliance Officer of FTX US and WRS, the General Counsel and Chief Compliance Officer of Alameda, and the General Counsel of Alameda Research Ventures Ltd.

21.     Collectively herein, the "<u>VC Defendants</u>" refers to the defendants named in the following actions:  Corrected Amended Multinational Venture Capital Fund Complaint, the MDL, ECF No. 182; and Amended Domestic Venture Capital Funds Complaint, the MDL, ECF No. 157.

### **FACTUAL BACKGROUND**

**A.     The Collapse of the FTX Group and Chapter 11 Filings.**

22.     On November 11 and November 14, 2022 (as applicable, the "<u>Petition Date</u>"), the FTX Debtors filed with the United States Bankruptcy Court for the District of Delaware voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  No trustee has been

appointed for the FTX Debtors in the Chapter 11 Cases, and the FTX Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Chapter 11 Cases was authorized by the Court by an order entered on November 22, 2022 [D.I. 128].

23.    Prior to the Petition Date, the FTX Group operated cryptocurrency exchanges and trading businesses.  As explained in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations"), the FTX Group faced a severe liquidity crisis that necessitated the filing of these Chapter 11 cases.  Additional factual background relating to the FTX Group's businesses and the commencement of these Chapter 11 cases is set forth in the First Day Declarations.

24.    The FTX Insiders, who all held top executive positions at the FTX Group, used their positions to perpetrate a massive fraud—squandering the FTX Group's assets on, among other things, luxury homes, political and "charitable" contributions, and various investments that would inure to the benefit of the FTX Insiders rather than the corporate entities that had paid for them.  The FTX Insiders funded much of this spending through Alameda Research, which, at the FTX Insiders' direction, unlawfully diverted assets belonging to FTX.com, the principal international cryptocurrency exchange operated by the FTX Group, to the FTX Insiders' pet projects.

25.    The FTX Insiders' conduct continues to be the subject of criminal proceedings initiated by federal prosecutors and actions or investigations brought by the Securities

and Exchange Commission, the Commodity Futures Trading Commission, and numerous state and international regulators. The FTX Insiders have pleaded guilty to or, in the case of Bankman-Fried, been convicted by a jury of multiple felonies, including wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, and conspiracy to commit securities fraud. *See* Bankman-Fried Jury Verdict; Min. Entries, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Dec. 19, 2022); Min. Entry, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Feb. 28, 2023). On March 28, 2024, Bankman-Fried was sentenced to 25 years in prison and ordered to forfeit to the United States more than $11 billion. *See* Min Entry, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Mar. 28, 2024). The remaining FTX Insiders are expected to be sentenced in the coming months, and forfeiture orders will be part of those sentences.

26.     As described in the Examiner Report of Robert Cleary, the FTX Debtors cooperated with federal prosecutors to secure the convictions of the FTX Insiders and continue to coordinate with the U.S. Department of Justice concerning the distribution of seized and forfeited assets in these Chapter 11 Cases [D.I. 15545 at 64-67]. The recovery estimates provided in the FTX Debtors' Disclosure Statement assume that the FTX Debtors are able to distribute the assets held by the Department of Justice [D.I. 15521 at 70].

**B.     The FTX Debtors' Investigation and Asset Recovery Initiatives.**

27.     Following the Petition Date, the FTX Debtors have worked to safeguard and recover debtor assets for the benefit of the FTX Debtors' creditors. These efforts have included investigating claims and initiating adversary proceedings against various former FTX Group executives, employees, professionals, business partners, and other parties who received transfers before the Petition Date that may be avoidable under the Bankruptcy Code or who have claims in these Chapter 11 proceedings that may be disallowed.

28.     On June 22, 2023, the FTX Debtors filed an adversary proceeding against K5 and its executives—Michael Kives and Bryan Baum [D.I. 1679].  Through an extensive review of financial and transaction records, deal records, communications, and other documents, the FTX Debtors determined that K5's executives received $700 million in FTX Group funds in exchange for transferring various interests in K5 to a sham entity created and owned by Bankman-Fried, Wang, and Singh.  Those transfers were part of a fraudulent scheme to enrich Bankman-Fried, Wang, Singh, and K5's executives to the detriment of the FTX Group and its creditors.  The FTX Debtors assert 16 counts against K5 and its executives, including claims for aiding and abetting breach of fiduciary duty (the Debtors' K5 Compl. ¶¶ 165-74), and seek to recover the $700 million in fraudulent transfers (*see id.* ¶¶ 13, 102-43) for the benefit of the FTX Debtors' creditors.  The FTX Debtors' action against K5 remains pending, and the FTX Debtors are diligently pursuing discovery.

29.     On July 19 [D.I. 1881] and July 20, 2023 [D.I. 1886], the FTX Debtors filed adversary proceedings asserting fraudulent transfer claims against Bankman-Fried and others, and for breach of fiduciary duties and other claims against the FTX Insiders, including Bankman-Fried.  On June 27, 2023 [D.I. 1727], the FTX Debtors also filed an adversary proceeding against Friedberg asserting breaches of fiduciary duty and other claims.  The FTX Debtors diligently and thoroughly investigated how the FTX Insiders commingled customer deposits and corporate funds and "misused them with abandon" by misappropriating "billions of dollars" in assets to finance "luxury condominiums, political and 'charitable' contributions, speculative investments, and other pet projects" to the detriment of FTX's customers or creditors.  Debtors' FTX Insiders Compl. ¶¶ 1-2, 27, 48, 52, 54; *see also* Debtors' Latona Compl. ¶ 5.  The FTX Debtors asserted 62 total counts against the FTX Insiders and others, including claims of breach of fiduciary duties and

aiding and abetting breach of fiduciary duties (*see* Debtors' FTX Insiders Compl. ¶¶ 108-36; Debtors' Latona Compl. ¶¶ 154-65; Debtors' Friedberg Compl. ¶¶ 225-34), conversion (*see* Debtors' FTX Insiders Compl. ¶¶ 145-51), and fraudulent transfer (*see id.* ¶¶ 152-343; Debtors' Friedberg Compl. ¶¶ 254-92).

30.    As detailed in the FTX Examiner Report, the FTX Debtors have also undertaken extensive investigation and claims analysis of the FTX Group's pre-petition professionals, vendors, and investors, as well as the FTX Insiders' so called "venture" investments [D.I. 15545 at 114-56; 193-95].

31.    The FTX Debtors' actions against Bankman-Fried and the other FTX Insiders remain pending.  To date, Bankman-Fried has not produced any documents to the FTX Debtors in connection with the FTX Debtors' adversary proceedings against him, nor has Bankman-Fried produced any documents in response to the Rule 2004 subpoena that the FTX Debtors served on him over a year ago.  The other FTX Insiders, however, have provided the FTX Debtors with certain documents to date.

### C.    The Multidistrict Litigation.

32.    On November 15, 2022, Defendants in this action and MDL Counsel sued Bankman-Fried and various other defendants.  *See* Amended Class Action Complaint and Demand for Jury Trial, *Garrison* v. *Bankman-Fried*, No. 22-cv-23753 (S.D. Fla. Dec. 16, 2022), ECF No. 16.  The suit was subsequently amended on December 16, 2022 to, among other things, name additional defendants.  *See* DeCamp Decl. Ex. 4.  Following this initial suit, MDL Counsel and various others filed numerous additional suits against a broad range of defendants who had been connected to the FTX Group prior to the Petition Date, including the FTX Insiders and the VC Defendants.  On June 5, 2023, these various actions were consolidated into the MDL.  *See* MDL Plaintiffs' Motion for Transfer of the *Onusz* Action to the Southern District of Florida for

Consolidation into MDL No. 3076 and Incorporated Brief Memorandum of Law, *In re FTX Cryptocurrency Exchange Collapse Litigation*, MDL No. 3076 (J.P.M.L. Dec. 22, 2023), ECF No. 227.

33.    On August 7, 2023, MDL Counsel filed an amended complaint (corrected on August 11) against the FTX Insiders.  This complaint broadly alleges, among other things, that the FTX Insiders committed, or aided and abetted in the commission of, fraud, conversion, unjust enrichment and breach of fiduciary duty by misappropriating FTX Group customer funds, making "numerous misrepresentations and omissions" to FTX Group customers (MDL FTX Insiders Compl. ¶¶ 322, 328, 332), "failing to establish adequate internal controls, commingling the assets and/or funds deposited by [FTX Group customers], violating applicable regulations and/or common law, and misappropriating the assets and/or funds deposited by [FTX customers], and/or permitting, authorizing and/or using funds and/or assets in [FTX customers'] FTX accounts for their own purposes of [sic] for purposes not authorized by [the MDL] Plaintiffs." *Id.* ¶ 357.

34.    On August 8, 2023, MDL Counsel filed an amended complaint styled the "Domestic Venture Capital Funds Complaint" against various high-profile U.S.-based investors in the FTX Group.  That complaint alleges that the "Domestic VC Defendants":

- "[R]epresented" to FTX Group customers "that they had performed adequate due diligence supporting their substantial FTX investments; that FTX's products and services were safe, trustworthy, and reliable; that SBF was a visionary crypto founder whose sole focus was on the greater good rather than profiting at the expense of others; that FTX was being competently run with extraordinary execution; and that FTX and SBF had strictly complied with all legal and regulatory requirements to safeguard their customers' assets, which included ensuring that funds deposited by FTX Platform users would be segregated for safekeeping." MDL Domestic VC Compl. ¶ 532.

- "[K]new, or should have known, that these representations were materially false and misleading when made" because through the due diligence they engaged in before investing, "they would have been apprised through such

activities of the wanton fraud and self-dealing and the complete lack of internal controls and competency present at FTX." *Id.* ¶ 533.

- Had "knowledge that FTX was not operating in the manner that Domestic VC Defendants had represented to consumers and the market as a result of their experience and relationship with FTX." *Id.*

- "[C]ontinued to provide infrastructure for and guidance on the company's trajectory, with any eye towards an IPO or private sale, the end game for venture capitalists like Domestic VC Defendants" despite "knowledge of SBF's misappropriation of Class Member funds." *Id.* ¶ 624.

- "[C]onspired with FTX to keep [FTX Group customer] funds flowing in while concealing the fact that FTX was engaging in a massive multi-billion dollar fraud." *Id.* ¶ 627.

Based on these allegations, the MDL Domestic VC Complaint asserts 13 counts against the Domestic VC Defendants, including negligent and intentional misrepresentation, aiding and abetting fraud and conversion, and civil conspiracy. *See id.* ¶¶ 696-753.

35. Also on August 8, 2023, MDL Counsel filed an amended complaint styled the "Multinational VC Defendants" complaint (corrected on August 11, 2023) against various high-profile foreign investors in the FTX Group. Similar to the complaint against the Domestic VC Defendants, the MDL Multinational VC Complaint alleges that:

- The Multinational VC Defendants knew, "[f]rom employing in-depth diligence standards in the industry," that "SBF was misappropriating Class Member funds, contrary to FTX's public representations . . . . In particular, the Multinational VC Defendants could see that (1) FTX was closely interconnected with Alameda, though SBF separately owned each entity, and SBF engaged in self-dealing by way of FTX and Alameda; (2) FTX granted Alameda exemptions and other special treatment that allowed Alameda to engage in margin trading and other risky activity on the FTX platform, exposing Class Members to Alameda's risk of loss; (3) FTX's projections were unsubstantiated and its financial statements, nothing more than 'homespun excel files;' and (4) FTX lacked critical internal controls, such as separate accounts for Class Member funds, an independent board of directors, or even a chief financial officer." MDL Multinational VC Compl. ¶ 327.

- Despite this apparent knowledge, which "even the most basic diligence . . . would have uncovered" (*id.* ¶ 338), the Multinational VC Defendants

"pour[ed] hundreds of millions each into FTX's repositories" (*id.* ¶ 343) "promoted the legitimacy of FTX and endorsed SBF's integrity and character" (*id.* ¶ 345) and "conspired with FTX to keep Class Member funds flowing in and the fraud hidden" (*id.* ¶ 381).

Based on these allegations, the Multinational VC Complaint asserts 19 claims, including civil conspiracy, aiding and abetting fraud, conversion and breach of fiduciary duty, and negligent and intentional misrepresentation. *See id.* ¶¶ 458-79, 511-25.

36.     In each complaint, MDL Counsel generally seeks to represent "the broadest group of victims," Prelim. Approval Mot. at 7, and asserts that all claims in these actions "are typical of the claims of the members of the Classes because all members were injured *through* [ ] *uniform misconduct.*" MDL FTX Insiders Compl. ¶ 291 (emphasis added); MDL Domestic VC Compl. ¶ 635 (emphasis added); MDL Multinational VC Compl. ¶ 395 (emphasis added). The broadly defined classes of persons MDL Counsel seeks to represent consist primarily of the *same* FTX Group customers that are creditors in these Chapter 11 Cases. Specifically, all complaints filed by MDL Counsel define the proposed class as "[a]ll persons or entities . . . who, within the applicable limitations period, purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a [yield-bearing account], or purchased FTT." MDL FTX Insiders Compl. ¶ 287; *see also* MDL Domestic VC Compl. ¶ 630; MDL Multinational VC Compl. ¶ 391.

37.     As further explained below, in addition to filing amended complaints in the MDL, MDL Counsel has also sought to interfere with the administration of these Chapter 11 Cases in other ways.

38.     MDL Counsel has sought to transfer to the MDL a purported class action raising core issues concerning whether customer cryptocurrency deposits are Debtor assets that

was properly filed in this Court.  That effort was rejected by the Judicial Panel on Multidistrict Litigation.

39.     Specifically, on December 27, 2022, the plaintiffs in the *Onusz* action brought a purported class action adversary proceeding in this Court against the FTX Insiders and certain FTX Debtors for breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, conversion, and aiding and abetting conversion.  *See* Complaint, *Onusz* v. *West Realm Shires Inc.*, No. 22-11068, Adv. No. 22-50513 (Bankr. D. Del. Dec. 27, 2022) [D.I. 321].  Following arm's-length negotiations, plaintiffs in the *Onusz* Action and the FTX Debtors entered into a Settlement and Plan Support Agreement in an effort to avoid litigation and ensure the efficient and effective implementation of the Plan [D.I. 3291].  The plaintiffs in that action have been constructive in recognizing the FTX Debtors' claims against the FTX Insiders, and the importance of this adversary proceeding, and the core issues it raises, being addressed in this Court and through the plan process.

40.     Almost a year after the *Onusz* Action was filed, MDL Counsel filed a notice of a potential tag-along action in the MDL, asserting that the *Onusz* claims—and specifically its assertions of customer cryptocurrency deposit conversion—should be transferred out of this Court and into the MDL.  MDL Plaintiffs' Motion for Transfer of the *Onusz* Action to the Southern District of Florida for Consolidation into MDL No. 3076 and Incorporated Brief Memorandum of Law, *In re FTX Cryptocurrency Exchange Collapse Litigation*, MDL No. 3076 (J.P.M.L. Dec. 22, 2023), ECF No. 227.  On April 11, 2024, the Judicial Panel on Multidistrict Litigation denied the motion, correctly finding that "*Onusz* is intertwined with the FTX bankruptcy" and that MDL Counsel "fail[ed] to account for the inefficiencies that likely would be caused by separating *Onusz*

from the rest of the proceedings in the Delaware Bankruptcy Court." *See Onusz* Action, Adv. D.I. 18.

41.     MDL Counsel has also subsequently suggested that it intends to seek FTX's sealed, confidential, and commercially sensitive customer list, to which MDL Counsel is not entitled.

**D.     Stay of the Multidistrict Litigation and Proposed Settlements**

42.     On September 11, 2023, Bankman-Fried filed a motion to stay the MDL action against the FTX Insiders until the conclusion of the criminal proceedings against him. Bankman-Fried's Motion to Stay the MDL, the MDL, No. 23-md-03076 (S.D. Fla. Sept. 11, 2023), ECF No. 241. The United States of America, by and through Damian Williams, the United States Attorney for the Southern District of New York, submitted a motion to intervene in the MDL, requesting that the MDL action against the FTX Insiders and discovery in the entire MDL be stayed until the conclusion of the criminal case against Bankman-Fried. Government's Application to Intervene and Motion to Stay and Memorandum in Support, the MDL, No. 23-md-03076 (S.D. Fla. Sept. 16, 2023), ECF No. 247. On October 2, 2023, the MDL court granted the requested stay. MDL Stay Order.

43.     The MDL action against the FTX Insiders remained dormant because of the stay until March 27, 2024 (the day before Bankman-Fried was sentenced to 25 years in prison[8]), when MDL Counsel moved for preliminary approval of the first tranche of settlements with Ellison, Wang, Singh, Friedberg, and certain promoter defendants in the MDL. *See generally* Prelim. Approval Mot. On April 19, 2024, MDL Counsel supplemented the Preliminary Approval

---

[8]     *See* Jury Verdict, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Nov. 7, 2023) ("Bankman-Fried Jury Verdict").

Motion with a proposed settlement of the claims against Bankman-Fried.  *See* DeCamp Decl. Ex. 8

("<u>Suppl. Prelim. Approval Mot.</u>"); DeCamp Decl. Ex. 9 ("<u>Supplemental Proposed Settlement</u>").

While a small tranche of promoter defendants in the MDL have thus far agreed to provide up to a

maximum of $1.36 million in settlement consideration (*see* Prelim. Approval Mot. at 2, 8),[9] the

proposed settlements with the FTX Insiders and Friedberg include zero monetary consideration.

Furthermore, the Preliminary Approval Motion and related proposed settlement agreements with

the FTX Insiders, and potentially others, include numerous provisions and requirements that are

irrelevant to the MDL, prejudicial to the FTX Debtors' reorganization efforts and ongoing

adversary proceedings against those same individuals, and contemptuous towards this Court and

its jurisdiction.

      44.     For example, the Preliminary Approval Motion parrots claims made by one

Defendant (a named plaintiff in the MDL FTX Insiders and VC Actions) to Judge Kaplan in

connection with Bankman-Fried's sentencing that "in light of the troubling facts raised in

connection with potential conflicts, wasted resources, and other issues plaguing the Bankruptcy

Estate," all funds that the Department of Justice has sought to forfeit from the FTX Insiders'

convictions "would best serve the FTX Victims by routing them through the FTX MDL," rather

than this Court.  Prelim. Approval Mot. at 2.  In a similar vein, the terms of the proposed

settlements with the FTX Insiders include that each will "take no position" regarding MDL

Counsel's "position that . . . restitution under the MVRA and/or recovery of funds forfeited by

[FTX Insiders] pursuant to 18 U.S.C. §§ 981, 3554 or 28 U.S.C. § 2461(c) should flow through

---

[9]     Even that minimal figure is overstated, as certain of the monetary settlements with promoters are subject to reduction or return based on unspecified "cooperation."  Proposed Settlements Ex. B7, at 7 ("Defendant [Brian Jung] shall provide agreed-upon cooperation and will be entitled to twenty-five (25) cents on each dollar returned through the agreed-upon cooperation, up to a limit of $180,000.").

the FTX MDL," rather than this Court, and that "Class Members shall receive distributions of the collections through the Southern District of New York or successor processes" of "any monies [ ] collected in satisfaction of any money judgment that the Southern District of New York enter[s] against [the FTX Insiders] as part of [their] sentencing." *Id.* at 7; the Proposed Settlements Ex.  B-1 ¶¶ 5.10-.11; *id.* Ex. B-2, ¶¶ 5.10-.11; *id.* Ex. B-3. ¶¶ 5.10-11; Supplemental Proposed Settlement ¶¶ 5.9-10.

45.     Moreover, blatantly disregarding the FTX Debtors' adversary proceedings against the FTX Insiders, and despite receiving zero monetary recovery in exchange, MDL Counsel and Defendants purport to grant each FTX Insider and Friedberg a general release of "any and all" claims, including "claims arising under . . . the Bankruptcy Code."  Prelim. Approval Mot. at 10; Proposed Settlements Ex. B-1 ¶¶ 4.33, 6.1; *id.*, Ex. B-2 ¶¶ 4.33, 6.1; *id.*, Ex. B-3 ¶¶ 4.33; *id.*, Ex B4, ¶¶ 4.27, 6.1; Suppl. Proposed Settlement ¶¶ 4.32, 6.1.

46.     The proposed settlements additionally require that Bankman-Fried and the other FTX Insiders "cooperate with MDL Counsel by, among other things, producing a wide variety of documents to them.  Proposed Settlements Ex. B-1 ¶ 5.7; *id.*, Ex. B-2 ¶ 5.7; *id.*, Ex B-3 ¶ 5.7; *id.*, Ex B-4 ¶ 5.2.3; Suppl. Proposed Settlement Agreement ¶ 5.7.  These documents include, for example, "all non-privileged documents . . . relating to any investment . . . in Anthropic PBC." Proposed Settlements Ex. B-1, ¶ 5.7.4; *id.* Ex. B-2, ¶ 5.7.4; *id.* Ex. B-3, ¶ 5.7.4; Supplemental Proposed Settlement ¶ 5.7.3.  None of the claims brought in the MDL concern, or even mention, any investment in Anthropic PBC ("Anthropic").[10]  MDL Counsel's desire for those documents

---

[10]     The FTX Debtors held shares in Anthropic at the Petition Date.  After establishing sale procedures [D.I. 7906] that were approved by this Court [D.I. 7908, 8215], the FTX Debtors agreed to sell certain of those shares for an aggregate price of approximately $884.1 million on March 22, 2024 [D.I. 10241-1].  This Court approved the sale [D.I. 11460], which closed on April 8, 2024.  Certain FTX Insiders also purchased Anthropic shares, which are presently being held by the Department of Justice as part of their forfeiture

appears instead to relate to their ongoing collateral attack on these Chapter 11 proceedings. Apparently disappointed with this Court's rejection of certain of the MDL Claimant's objections to the estate's sale of certain Anthropic shares [D.I. 7549; D.I. 11460], the MDL Claimants have alleged that the sale evidences the FTX Debtors' mismanagement of estate assets. Defendant Sunil Kavuri—a named plaintiff in the MDL FTX Insiders and VC Actions—complained in his victim statement at Bankman-Fried's sentencing hearing that the sale of the shares "caused significant losses" and baselessly claimed that the shares themselves were customer property. *See* Transcript of the Sentencing Hearing of Bankman-Fried, *United States* v. *Bankman-Fried*, 22-cr-00673, 18:15-19:1 (S.D.N.Y. March 28, 2024) ("Bankman-Fried Sentencing Transcript") at 16:3-6.

47.     These gripes about the sale of Anthropic shares have nothing to do with the MDL and instead, as Judge Kaplan correctly observed, merely seek to relitigate "what the bankruptcy estate should or shouldn't have done." *Id.* at 16:9-10. Any such grievances— irrespective of their frivolity—could only have been brought before this Court.

48.     Similarly, MDL Co-Lead Counsel curiously spoke *in support* of Bankman-Fried at his criminal sentencing, stating that Bankman-Fried had been "very helpful" to Defendants' efforts to undermine this Court's jurisdiction and that "there should be some consideration for that." *Id.* 18:21-19:3 (emphasis added). Outside of Bankman-Fried's own counsel, this MDL Counsel was the *only* person who spoke on Bankman-Fried's behalf at the sentencing.

49.     In exchange for these provisions, the FTX Insiders unsurprisingly "agree that Class Counsel may petition the Court for an award of Attorneys' Fees and Expenses in an

---

efforts or are otherwise subject to ongoing negotiations. On May 31, 2024, the FTX Debtors proposed selling certain additional Anthropic shares for an aggregate purchase price of approximately $452.3 million [D.I. 16380-1].

aggregate amount not to exceed thirty three percent (33%) of the Settlement Funds," which they define to include forfeiture and restitution from the criminal cases. Prelim. Approval Mot. at 13-14. Thus, should MDL Counsel successfully have "restitution under the MVRA and/or recovery of funds forfeited by [FTX Insiders] pursuant to 18 U.S.C. §§ 981, 3554 or 28 U.S.C. § 2461(c) . . . flow through the FTX MDL," (*id.* at 2 n.4, 7, 8) up to *one-third* of that amount would "flow" to MDL Counsel, rather than to FTX creditors and other victims. *Id.* at 7-8.

50.    The Preliminary Approval Motion and proposed settlements also lack important details about how the settlements would be administered in parallel to the FTX Debtors' Plan, including whether class members who should be barred from receiving recoveries would be eligible for a distribution, whether MDL Counsel intend to address the risks of class members receiving double recovery, and whether class members would be subject to know-your-customer requirements in order to receive any recovery.

51.    For example, the Preliminary Approval Motion, while touting the MDL Actions as superior to these Chapter 11 proceedings, fails to account for the "Anti-Double Dip" provision in the FTX Debtors Chapter 11 Plan of Reorganization, [D.I. 15520] (the "Plan"), which requires that any "Holder of an Allowed Claim" that "receives payment from a party that is not a Debtor on account of such Claim" must "transfer, repay, or return such payment . . . to the extent such Holder's total recovery on account of such Claim . . . exceeds the amount that other similarly-situated Holders . . .  received." Plan § 7.12. As a result of the Plan's "Anti-Double Dip" provision, the MDL cannot increase overall recoveries for creditors, making MDL Counsel and the Defendants the sole beneficiaries of the entire parallel process.

52.    The Preliminary Approval Motion and related exhibits are short on details and merely state, without any explanation or substance, that MDL Counsel believes "that Class

Members comprise the broadest group of victims, holding in the aggregate, the largest claim for

losses," Prelim. Approval Mot. at 7, and defines "Distribution Plan" as:

> [T]he plan hereafter approved by the District Court for the distribution of the
> Settlement Amount (net of any Attorneys' Fees or costs that are awarded by the
> District Court) to Class Members. Distributions to Class Members will be pro-rata
> based on the value of each Class Member's claim as determined according to an
> objective formula.

Proposed Settlements Ex. B-1, ¶ 4.15; *id.* Ex. B-2, ¶ 4.15; *id.* Ex. B-3, ¶ 4.15; *see also id.* Ex. B-4,

¶ 4.13.  The Preliminary Approval Motion further makes clear that the "Distribution Plan" will be

effectuated "under the supervision and direction and with the approval of the District Court," with

"District Court" defined as "the Honorable K. Michael Moore of the United States District Court

for the Southern District of Florida and any successor court presiding over the FTX MDL."  *See*

*id.* Ex. B-1, ¶ 4.16; *id.* Ex. B-2, ¶ 4.16; *id.* Ex. B-3, ¶ 4.16; *id.* Ex. B-4, at 1.  None of this is

appropriate under the circumstances.

## NATURE OF RELIEF REQUESTED

     53.    The FTX Debtors request that the Court enter an order enforcing the

automatic stay provided for in section 362(a) of the Bankruptcy Code against Defendants with

respect to the MDL FTX Insiders and the VC Actions because these actions assert claims that are

property of the FTX Debtors' estate.  To the extent the Court determines that any of the claims in

the MDL FTX Insiders and the VC Actions are not property of the FTX Debtors' estate, the FTX

Debtors seek an extension of the automatic stay to those claims pursuant to section 362(a) in order

to protect the FTX Debtors' reorganization efforts.  The FTX Debtors additionally request an

injunction pursuant to section 105(a) of the Bankruptcy Code to enjoin the MDL FTX Insiders and

VC Actions, which have interfered, and will continue to interfere, with the orderly and effective

administration of the FTX Debtors' estate, in order to permit the solicitation and confirmation of

the Plan.  Finally, to the extent that the MDL Claimants receive property or documents from the

FTX Insiders, Friedberg, and the VC Defendants belonging to the FTX Debtors' estate, the FTX Debtors seek an order compelling the MDL Claimants to turn over such property or documents to the FTX Debtors.

**COUNT I:  DECLARATORY RELIEF**
**PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE**

54.     The FTX Debtors incorporate by reference paragraphs 1 through 51 as if fully set forth here.

55.     The FTX Debtors request that the Court enter an order enforcing the automatic stay provided in section 362(a) of the Bankruptcy Code against Defendants with respect to the MDL FTX Insiders and VC Actions.

56.     Section 362(a) of the Bankruptcy Code automatically stays (1) "the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title," and (2) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1), (3).

57.     Enforcing the automatic stay as to the MDL FTX Insiders and VC Actions is warranted because the MDL FTX Insiders and VC Actions assert causes of action that are property of the FTX Debtors' estate and stay protection is essential to the FTX Debtors' ongoing reorganization efforts.

58.     A claim belongs to the estate when it (1) "existed at the commencement of the [bankruptcy] filing and the debtor could have asserted the claim on [its] own behalf under state law," and (2) is "a general one, with no particularized injury arising from it." *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014).  This Court possesses the exclusive authority to "determin[e]

-21-

. . . what constitutes property of the bankruptcy estate." *In re Cont'l Airlines*, 138 B.R. 442, 445 (D. Del. 1992).

59.    The claims made in the MDL FTX Insiders and VC Actions meet this standard.  The Defendants assert claims in the MDL of, among others, breaches of fiduciary duties, aiding and abetting breaches of fiduciary duty and fraud, negligent and intentional misrepresentation, conversion, and civil conspiracy against the FTX Insiders and the VC Defendants.  The claims asserted in the MDL FTX Insiders and VC Actions arose prior to the bankruptcy and not only could have been—but as to the FTX Insiders, Friedberg, and certain of the VC Defendants already have been—asserted by the FTX Debtors on their own behalf before this Court.  *See, e.g.*, Debtors' FTX Insiders Compl.; Debtors' Friedberg Compl.; Debtors' K5 Compl.

60.    Additionally, because any recovery in the MDL FTX Insiders and VC Actions will inure to the benefit of FTX creditors, and because the MDL FTX Insiders and VC Actions do not assert a single cause of action that would be unavailable to other FTX creditors, the claims are "general."

61.    Accordingly, the relief the FTX Debtors seek in this Complaint and in the Motion is necessary and appropriate to protect the integrity of the automatic stay and these Chapter 11 cases.

### COUNT II:  INJUNCTIVE RELIEF
### PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE

62.    The FTX Debtors incorporate by reference paragraphs 1 through 51 as if fully set forth here.

-22-

63.     The Court should issue an injunction pursuant to section 105(a) of the Bankruptcy Code to enjoin the MDL FTX Insiders and VC Actions, which have interfered, and will continue to interfere, with the orderly and effective administration of the FTX Debtors' estate.

64.     Section 105(a) of the Bankruptcy Code authorizes and empowers this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Chapter 11 Cases, aid in the preservation of the assets of the FTX Debtors' estate, and aid in the formulation and confirmation of a Chapter 11 plan that maximizes recovery to all of the FTX Debtors' creditors.

65.     As a threshold matter, the Court has jurisdiction to enjoin the MDL FTX Insiders and VC Actions under section 105(a) because those actions are "related to" the Chapter 11 proceedings.  28 U.S.C. § 1334(b).  Given the present and potential future impact of the MDL FTX Insiders and VC Actions on the FTX Debtors' estate, the MDL FTX Insiders and VC Actions easily satisfy the jurisdictional requirement of "conceivably hav[ing] any effect on the estate being administered in bankruptcy."  *Pacor, Inc.* v. *Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc.* v. *Petrarca*, 516 U.S. 124 (1995).

66.     The circumstances here satisfy each of the four factors for injunctive relief under section 105(a).

67.     *First*, the FTX Debtors have a strong likelihood of successfully reorganizing if the requested injunctive relief is granted.  As a result of the FTX Debtors' successful efforts to secure, preserve, and maximize the value of their assets for the benefit of their creditors, the FTX Debtors have recently filed the Plan, which anticipates paying all claims of exchange customers and unsecured creditors for their actual Petition Date losses, as calculated by the FTX Debtors, *more than in full*.  The Plan was developed over the course of many months with

input from key creditor constituencies, including the Official Committee of Unsecured Creditors and the Ad Hoc Committee of Non-U.S. Customers.  As such, this factor weighs strongly in favor of injunctive relief.

68.     *Second*, the FTX Debtors will be irreparably harmed without an injunction because, if the MDL FTX Insiders and VC Actions are permitted to continue, the FTX Debtors will: (1) face material adverse economic consequences, including the threat of estate assets (such as future settlement proceeds) being distributed through an undefined settlement procedure in the MDL and the related challenges in settling outstanding claims against the FTX Insiders and K5; (2) expend significant resources monitoring and participating in the MDL FTX Insiders and VC Actions to ensure that the FTX Debtors' interests are not impaired by collateral estoppel and record taint; and (3) be forced to participate in discovery, including potential depositions of the FTX Insiders and Friedberg and the potential disclosure of FTX's sealed, confidential and commercially sensitive customer list, which will necessarily interfere with the FTX Debtors' orderly administration of the Chapter 11 proceedings.

69.     *Third*, the balance of harms strongly favor injunctive relief.  The FTX Debtors' reorganization efforts, including their ability to efficiently and equitably distribute maximum value for the benefit of their creditors, will be substantially harmed absent an injunction. Indeed, the FTX Debtors' ability to pay out claims pursuant to the Plan depends in part on securing funds forfeited to the Department of Justice by the FTX Insiders that the Defendants now seek to capture for themselves through a parallel claims process that serves primarily to benefit MDL Counsel in the form of exorbitant legal fees.  In contrast, the harm (if any) to the Defendants is minimal, as mere delay is insufficient to prevent an injunction, and the Defendants, purporting to

represent virtually all creditors, will be equitably (and fully) compensated and have their rights best advanced by receiving distributions under the Plan.

70.     And *fourth*, enjoining the MDL Actions will serve the public interest in promoting an orderly reorganization by allowing the FTX Debtors to focus on confirming the Plan. Through the Plan, the FTX Debtors will be able to resolve the MDL FTX Insiders and VC Actions within the Chapter 11 process, easing the burden on judicial resources while providing for just, efficient, and equitable recovery for the MDL FTX Insiders and VC Actions. *See In re W.R. Grace & Co.*, 386 B.R. 17, 36 (Bankr. D. Del. 2008) (extending injunction to non-debtor affiliate because "due to the volume of claims, jurisdictional spread, and numerous controversies, completing the reorganization process also serves the public interest by resolving thousands of claims in a uniform and equitable manner" (internal citations omitted)).

71.     Accordingly, the injunctive relief the FTX Debtors seek in this Complaint and in the Motion is appropriate and essential to the orderly and effective administration of the FTX Debtors' estate.

## COUNT III:  TURNOVER
## PURSUANT TO 11 U.S.C. §§ 542(a) and 542(e)

72.     The FTX Debtors incorporate by reference paragraphs 1 through 51 as if fully set forth here.

73.     The FTX Debtors seek an order from the Court pursuant to section 542(a) of the Bankruptcy Code directing the MDL Plaintiffs to turn over to the FTX Debtors any property of the FTX Debtors' estate that they have received or will receive in the future from the FTX Insiders, Friedberg, and the VC Defendants, including any distributions of funds they receive in connection with the purported settlements with the FTX Insiders, Friedberg and the VC Defendants.  As alleged above, Defendants in this action seek to secure judgments on, or

settlements of, claims belonging to the FTX Debtors' estate against the FTX Insiders, Friedberg, and the VC Defendants.  Any award granted to Defendants by virtue of the MDL FTX Insiders and VC Actions would comprise assets belonging to the FTX Debtors.

74.     The FTX Debtors further seek an order from the Court pursuant to section 542(e) of the Bankruptcy Code directing Defendants to turn over and disclose to the FTX Debtors any recorded information related to the FTX Debtors' property or financial affairs, including but not limited to books, documents, records, and papers that Defendants receive pursuant to settlement and cooperation agreements with the FTX Insiders, Friedberg, and VC Defendants. Such information will assist the FTX Debtors in administering their estate and recovering assets.

75.     In furtherance of turnover pursuant to sections 542(a) and (e) of the Bankruptcy Code, the FTX Debtors seek an order from the Court directing Defendants to provide an accounting to the FTX Debtors every three months detailing any assets or documents that they have received from the FTX Insiders, Friedberg, and VC Defendants.

76.     The relief requested is further authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

## PRAYER FOR RELIEF

**WHEREFORE**, the FTX Debtors respectfully request that the Court enter judgment against the above-captioned Defendants:

77.     Enforcing the automatic stay provided in section 362(a) of the Bankruptcy Code against Defendants with respect to the MDL FTX Insiders and VC Actions, as they assert causes of action that are property of the FTX Debtors' estate;

78.     Extending the automatic stay to any claims raised in the MDL FTX Insiders and VC Actions that are determined by the Court not to be owned by the Debtors' estate in order to protect the FTX Debtors' reorganization efforts;

79.     Enjoining the MDL FTX Insiders and VC Actions from asserting causes of action that belong to the FTX Debtors' estate or claims that would otherwise interfere with the orderly and effective administration of the FTX Debtors' estate;

80.     Turning over to the FTX Debtors assets and documents that they have received from the FTX Insiders, Friedberg, and VC Defendants which are property of the FTX Debtors' estate, including any purported settlement and cooperation agreements, and providing an accounting of any such assets or documents they receive to the FTX Debtors every three months; and

81.     Granting the FTX Debtors such other and further relief as the Court deems just and proper.

Dated: June 3, 2024
    Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware  19801
Telephone: (302) 467-4400
E-mail:  landis@lrclaw.com
       mcguire@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
125 Broad Street
New York, NY  10004
Telephone: (212) 558-4000
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      decampj@sullcrom.com

*Counsel for the FTX Debtors*

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
William A. Burck (admitted *pro hac vice*)
Sascha N. Rand (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
E-mail: williamburck@quinnemanuel.com
      sascharand@quinnemanuel.com

*Special Counsel to the FTX Debtors*